# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

LUIS A. LEBRON,
    *Plaintiff*,

v.

SCOTT SEMPLE, *et al.*,
    *Defendants*.

No. 3:18-cv-01017 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Luis Lebron is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Commissioner Scott Semple, former Commissioner Leo Arnone, Correction Officer Williams, Nurse Parker, Correction Officer McMahon, Dr. Wright, Dr. Ruiz, Warden Brighthaupt, and several unidentified DOC officials. After an initial review, I conclude that the complaint should proceed as to plaintiff's Eighth Amendment claim for deliberate indifference to safety and serious medical needs as to some of the defendants.

### BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling. On August 7, 2015, plaintiff was transported via a correctional transport unit ("CTU") vehicle to the UConn Medical Health Center. At approximately 5:00 p.m., Officer Williams picked him up from the health center to bring him back to Cheshire Correctional Institution. Williams was clearly upset, angry, and in a rush to finish her transport duties. While driving, Williams made and received calls on her cell phone, sped, and drove recklessly on the highways and streets. Plaintiff believes Williams was attempting to have

1

another officer cover her transport duties so that she could attend to a personal matter. Doc. #1 at 3–4 (¶¶ 1–4).

At approximately 6:30 p.m., Williams and plaintiff arrived at the New Haven Correctional Center ("NHCC") to pick up and drop off other inmates. There, Williams asked several staff members to take over her transport duties, but no one volunteered. Visibly upset, she reentered the CTU van in which plaintiff was still confined and tossed her phone on the center console. Then, she started the van, shifted the gears into reverse, and began backing up when her cell phone rang. Williams picked up her cell phone and "unexpectedly gunned the vehicle in reverse," crashing into the side of the facility's sally port area. She then drove off, turned onto a one-way street, and nearly collided with another CTU van. The driver of the other CTU van exited his vehicle, confronted Williams, and told her to report the incident and seek medical attention for the inmate passengers. Williams then turned around and drove back to NHCC, where NHCC staff were assessing the damage at the crash site. *Id.* at 4 (¶¶ 5–9)

While back at NHCC, plaintiff and the other inmates exited the van and informed several officials that they were in pain from the accident and required medical attention. Plaintiff and five other inmates were placed in a nearby building for over an hour and a half without any medical treatment. Around 8:30 p.m., defendant Nurse Parker examined plaintiff for injuries. She drafted a medical report of her evaluation, in which she noted that plaintiff expressed that he was experiencing nausea, pain is his neck, back, and shoulders, and an elevated blood pressure. She also recorded that she had administered pain medication to plaintiff and that a follow-up appointment was needed. Plaintiff reviewed and signed the report and then returned to "the bullpen." *Id.* at 4–5 (¶¶ 10–14).

Around 9:20 p.m., plaintiff was removed from "the bullpen," placed in another CTU vehicle, and transported back to Cheshire. He arrived at Cheshire at around 10:30 p.m. There,

another nurse evaluated him and took his vitals. She then instructed him to visit the medical unit before returning to his housing unit because his vital signs were abnormal. Around 10:50 p.m., plaintiff went to the medical unit as instructed and was examined by another nurse. He informed the nurse that he was dizzy, nauseous, and experiencing serious neck and back pain. The nurse ordered pain medication and noted that plaintiff needed to be evaluated by defendant Dr. Ruiz the following morning on August 8. *Id.* at 5–6 (¶¶ 15–18); Doc. #1-1 at 2 (medical report).

The next day, August 8, 2015, Dr. Ruiz did not evaluate plaintiff. Instead, another nurse examined plaintiff and noted that his vitals were still abnormal and that he was given pain medication. She assured plaintiff that Dr. Ruiz would evaluate him, but the evaluation never occurred. Doc. #1 at 6 (¶¶ 19–20).

The following day, August 9, 2015, plaintiff began experiencing severe back spasms. The unit officer saw plaintiff's condition and sent him to the medical unit. Plaintiff was examined by two nurses, one of whom placed a phone call and stated on the call that plaintiff was in obvious pain. The recipient of the call instructed the nurse to give plaintiff a shot. Afterward, plaintiff was informed that Dr. Ruiz would evaluate him in two weeks. But this visit with Dr. Ruiz never occurred. *Id.* at 6 (¶¶ 21–24).

On August 11, 2015, plaintiff submitted a freedom of information ("FOI") request to defendant Officer McMahon seeking copies of his medical reports, incident reports, pictures, and video evidence of the incident at NHCC. McMahon did not respond to the request. Plaintiff followed up with additional requests on September 26, November 1, and November 19. McMahon did not respond to any of them. On August 13, plaintiff sent a letter to then-Commissioner Arnone explaining the accident, lack of medical care for plaintiff, and DOC's failure to interview him about the accident or contact appropriate authorities. *Id* at 6–7 (¶¶ 25–29).

On October 19, 2015, plaintiff filed a medical grievance concerning the lack of medical care for his accident-related injuries. On October 27, Nurse Estrom denied the grievance because plaintiff did not attempt an informal resolution prior to filing his grievance. But she informed plaintiff that he had been placed on the sick call list. Plaintiff appealed the denial of the grievance, but Nurse Estrom returned the appeal unanswered. *Id.* at 7–8 (¶¶ 32–34); Doc. #1-1 at 6–7 (grievance); 9–10 (appeal).

On November 9, 2015, plaintiff sent a request to the medical records clerk requesting his medical reports and evaluations surrounding the incident at NHCC. He received the requested documents in mid-November, but he noticed that the medical report drafted by Nurse Parker on August 7 had been "switched/falsified." Doc. #1 at 8 (¶¶ 35–36).

Thereafter, plaintiff wrote to Warden Brighthaupt to request an investigation of the August 7 incident because he believed that there was an "obvious cover up conspiracy going on," but Brighthaupt did not respond. *Id.* at 8 (¶¶ 37–38)

In December 2015, plaintiff asked his habeas attorney to request reports and video evidence from McMahon because McMahon would not respond to his FOI requests. On December 31, McMahon responded to the attorney's FOI request by acknowledging the receipt of the request. But he never provided the requested materials. *Id.* at 7 (¶¶ 30–31); Doc. #1-1 at 4 (letter acknowledging receipt of request).

On January 20, 2016, plaintiff sent a second letter to Arnone requesting an investigation into the car accident, but Arnone did not respond. On February 22, he sent a letter to Commissioner Semple explaining the accident, lack of medical care, failure of DOC staff to respond to his letters and complaints, and failure of DOC staff to report the accident to the proper authorities. He sent a copy of the letter to the external affairs division with supporting

4

documents. To date, plaintiff has not received any responses to his requests. Doc. #1 at 8–9 (¶¶ 39–42).

Thereafter, Brighthaupt had plaintiff transferred from Cheshire to Osborn Correctional Institution because of his constant requests and letters about the accident. Plaintiff was later transferred back to Cheshire "out of harassment/retaliation." On July 23, 2016, plaintiff submitted another FOI request for copies of the transfer orders, but no documents have been provided to him. *Id.* at 9 (¶¶ 43–46).

On March 7, 2017, plaintiff submitted another FOI request for all documents related to the August 7 accident. He received five pages of documentation. While at Cheshire, plaintiff was given an additional nine pages of documents. *Id.* at 9–10 (¶ 47).

While at Osborn, plaintiff submitted several requests to be seen by medical personnel for his shoulder and back pain and for his limited mobility. But medical staff did not provide plaintiff with adequate treatment until he threatened to file a medical habeas corpus action. *Id.* at 10 (¶ 48).

Plaintiff also requested to be placed on "special needs status" pursuant to the Americans with Disabilities Act. Such a status would allow him to receive modified transportation which would relieve the back pain plaintiff experiences during transportation trips. This request was denied. Plaintiff took three trips in December of 2017 in the regular transport van and suffered from extreme stress to his spinal injuries. During one of those trips, his "legs gave out" which caused injuries to both of his knees and required a three-day hospitalization. Nevertheless, medical staff continued to deny his accommodation requests. *Id* at 10–11 (¶¶ 49–52).

A short time later, plaintiff spoke to Dr. Wright about his shoulder and back pain, Dr. Wright refused to schedule an x-ray or MRI. Despite the evidence of muscle atrophy, limited mobility, and significant worsening of plaintiff's back condition, Dr. Wright would not schedule

a follow-up appointment. No x-rays or MRIs were ordered until late 2017, at which point the x-rays revealed serious injuries to plaintiff's neck. *Id.* at 11 (¶¶ 52–53); Doc. #1-1 at 19–26.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).[1]

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

---

[1] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would likely decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. *See Hamlin v. City of Waterbury, et al.*, 2017 WL 4869116, at *1 n.1 (D. Conn. 2017).

Plaintiff's complaint includes only a "Count Two" alleging state law claims. Construing the complaint liberally, I conclude that plaintiff has brought claims for violations of his Eighth Amendment right against cruel and unusual punishment, First Amendment right against retaliation, and violation of the Americans with Disabilities Act ("ADA"). I will now evaluate each of these claims in turn.

### *Supervisory Defendants*

Plaintiff's claims against Commissioner Semple and Commissioner Arnone rest on their failures to respond to letters sent to them by plaintiff. But he has failed to allege sufficient facts to show that they were personally involved in any deprivation of his constitutional rights. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (noting that "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant."). "Courts have held that [a] failure to respond to a letter of complaint does not constitute the personal involvement necessary to maintain a section 1983 claim." *Richardson v. Dep't of Corr.*, 2011 WL 710617, at *3 (S.D.N.Y. 2011). Accordingly, I will dismiss all claims against Commissioner Semple and Commissioner Arnone. I will also dismiss plaintiff's claims as to Brighthaupt to the extent that his claims rely on Brighthaupt's failure to respond to his letters and complaints.

### *Eighth Amendment Claim—Deliberate Indifference to Safety and Serious Medical Needs*

A prison official's deliberate indifference to the safety or serious medical needs of a prisoner violates the Eighth Amendment. *See Spavone v. New York State Dep't of Corr. Serv's.*, 719 F.3d 127, 138 (2d Cir. 2013). A prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an objective requirement— that the prisoner's medical need was sufficiently serious. *Ibid.* The prisoner must show that he

suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

Second, there is a subjective requirement: that the defendant have acted recklessly—that is, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action. *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical malpractice. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Instead, a prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind when denying treatment for the prisoner's medical needs. *See Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

To establish a constitutional violation for deliberate indifference to safety, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists if prison officials know of and disregard an excessive risk to inmate health or safety. *See id.* at 837; *Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006) (defendants must have been actually aware of substantial risk that inmate would suffer serious harm as result of their actions or inactions); *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 358 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

Plaintiff alleges that defendant Williams drove the transport van recklessly and crashed into a building as a result. He further alleges that she drove off without stopping to allow the inmates in the van to receive medical attention. Moreover, she continued to drive recklessly and nearly collided with another transport van. She returned to NHCC and allowed the inmates to receive medical care only after the driver of the other van directed her to do so. These allegations

8

are enough to support the claim that Williams was aware that her reckless driving exposed plaintiff to serious risk of harm, and that plaintiff may in fact have suffered such harm as a result of Williams's reckless driving. Moreover, she disregarded the risk by driving off following the crash. Such conduct may constitute deliberate indifference to safety.

Furthermore, Plaintiff alleges that after being in a car accident, he suffered serious injuries to his neck and back. The extent of these injuries were only revealed two years later when he finally received adequate medical treatment. I conclude at this stage that plaintiff's alleged injuries constituted a serious medical need. "[S]evere back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment." *Guarneri v. Hazzard*, 2008 WL 552872, at *6 (N.D.N.Y. 2008) (citation omitted).

Plaintiff also alleges that after the accident, he was seen by several nurses, including by Nurse Parker, who all evaluated plaintiff and provided adequate medical care. The nurses determined that plaintiff needed to be seen by Dr. Ruiz, but the appointment never occurred. Plaintiff was later seen by Dr. Wright, but Dr. Wright allegedly refused to provide adequate treatment. As a result, the seriousness of plaintiff's injuries was only discovered nearly two years after the accident. Plaintiff alleges sufficient facts to suggest that both Dr. Ruiz and Dr. Wright were aware of the car accident and the potentially substantial injuries that plaintiff may have sustained, but nonetheless refused to provide treatment in deliberate indifference to plaintiff's medical needs. Although plaintiff has also sued Nurse Parker, he does not allege any facts showing that she provided inadequate care.

Plaintiff further alleges that due to his neck and back injuries he had a serious medical need for alternative means of transportation when being transported to and from prison. He claims that his requests for accommodations were denied even after he fell on one trip and sustained injuries to both knees and required a three-day hospitalization. I conclude that

9

plaintiff's allegations as to the failure to provide transport accommodations give rise to an Eighth Amendment claim, but plaintiff has not identified the individuals who denied those requests.

Accordingly, I will allow plaintiff's claim for Eighth Amendment deliberate indifference to safety and serious medical needs to proceed against Williams, Dr. Ruiz, and Dr. Wright, but I will dismiss the claim as to Nurse Parker. Additionally, if, within ninety (90) days of the date of this order, plaintiff identifies the medical personnel who denied his requests for special needs status and files a motion to amend his complaint to identify those individuals by name, the Court may permit the Eighth Amendment claim to proceed against those individuals as well.

### *First Amendment Retaliation*

Plaintiff alleges that Brighthaupt transferred him from Cheshire to Osborne in retaliation for his many letters and complaints about the accident and attendant injuries. In order to state a First Amendment free-speech retaliation claim, a plaintiff must demonstrate that he was engaged in constitutionally protected speech activity, that the defendant took adverse action against him, and that there was a causal connection between the protected activity and the adverse action. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

Plaintiff's allegations do not state a plausible claim for First Amendment retaliation, because there are no facts alleged to suggest that the transfer was adverse to him. *See Warren v. Goord*, 2008 WL 5077004, at *2 (2d Cir. 2008) (affirming dismissal of First Amendment retaliation claim that was based on prisoner's transfer for lack of evidence that conditions at new facility were more adverse than conditions at prior facility); *Gonzalez v. Maurer*, 2017 WL 4531685, at *2 n.1 (D. Conn. 2017) (same). Accordingly, I will dismiss plaintiff's First Amendment retaliation claim against Brighthaupt and any other defendants allegedly involved in the transfer.

*Americans with Disabilities Act (ADA)*

Plaintiff's complaint includes allegations that defendants have failed to provide him with special needs status pursuant to the ADA. But the ADA only allows for a cause of action for discrimination based on a disability. To state a *prima facie* claim for discrimination under the ADA a plaintiff must allege: (1) that he is a "qualified individual" with a disability; (2) that he was excluded from participation in a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability. *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

Plaintiff has not plausibly alleged an exclusion or discrimination claim under the ADA, because he has not alleged any facts to suggest that prison officials denied him a "special needs status" because of his back pain. There are no facts pleaded to suggest that he was singled out because of his injuries. *See Gonzalez*, 2017 WL 4531685, at *3 (dismissing prisoner's ADA claims based on denial of eye care, because the prisoner's "complaint is that he has not received treatment for his vision, not that any vision disability prompted any of the defendants to discriminate against or disadvantage him"). Accordingly, I will dismiss plaintiff's ADA claim.

*Remaining claims and defendants*

Plaintiff sues Correctional Officer McMahon for his failure to respond to plaintiff's FOI requests and failure to provide the requested documentation and evidence. But the federal FOIA statute only provides for lawsuits against federal agencies, not to state agencies or state officials. *See Geer v. Pheffer*, 2015 WL 332996, at *2 (E.D.N.Y. 2015). Accordingly, plaintiff has not stated any federal claim against defendant McMahon, and I will dismiss McMahon from this action. As noted in footnote #1 above, I will otherwise decline at this time to address plaintiff's remaining state law claims.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Plaintiff's Eighth Amendment claims for deliberate indifference to safety and deliberate indifference to serious medical needs may proceed against Williams, Ruiz, and Wright in their individual capacities for damages. If, within ninety (90) days, plaintiff can identify the medical personnel who denied his requests for "special needs status," he may file a motion to amend his complaint and attach an amended complaint listing those defendants. Any amended complaint must be limited to the Eighth Amendment claims against Williams, Ruiz, Wright, and the newly identified medical personnel surrounding the August 7 accident and the denial of medical care thereafter.

(2) All other claims in the complaint are hereby DISMISSED. The clerk is directed to terminate Semple, Parker, McMahon, Arnone, and Brighthaupt as defendants to this action.

(3) The Clerk shall verify the current work addresses for Williams, Ruiz, and Wright with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) Williams, Ruiz, and Wright shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed by **February 2, 2019.** Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed by **March 4, 2019.**

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 6th day of August 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge